[Civ. No. 26551.   First Dist., Div. Four.   June 20, 1969.]

In re A. J., a Person Coming Under the Juvenile Court
Law.

HERSCH BAYES, as Chief Probation Officer, etc., Plaintiff and Respondent, v. A. J. et al., Defendants and Appellants.

Paul Ligda, Public Defender, for Defendants and Appellants.

Milton Goldinger, County Counsel, and Rosalie W. Green, Deputy County Counsel, for Plaintiff and Respondent.

CHRISTIAN, J.—This appeal, brought on behalf of A. J., a boy aged 13, attacks an order of the juvenile court adjudging him a dependent child under section 600, subdivision (b) of the Welfare and Institutions Code[1] upon a finding that, as

[1] § 600: "Any person under the age of 21 years who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge such person to be a dependent child of the court:

" . . . . . . . . . .

"(b) Who is destitute, or who is not provided with the necessities of life, or who is not provided with a home or suitable place of abode, or whose home is an unfit place for him by reason of neglect, cruelty, or depravity of either of his parents, or of his guardian or other person in whose custody or care he is."

alleged in the amended petition, "The home of said minor is an unfit place for him by reason of the depravity of his mother, in that the mother is . . . co-habiting with a man not her husband."

The only evidence received at the jurisdictional hearing was the testimony of the minor's mother and the man with whom she is living, establishing the following facts:

1. Their cohabitation had continued for several months and the adulterous relationship had produced one infant, with another expected.

2. The mother had left her husband (appellant's father) when "he tried to give me away to another man."

3. The mother desires to get a divorce but cannot meet the cost on her welfare grant. Both the mother and the man with whom she is living testified that they plan to be married when she obtains a divorce.

Hearing this evidence, the judge declared that "an adulterous cohabitation is ipso facto depravity in the home" and, without further inquiry, made an order determining appellant's dependency under Welfare and Institutions Code section 600, subdivision (b). The order also commits appellant to the care, custody and control of the probation officer for placement in a foster home or institution.

Citing *In re Raya* (1967) 255 Cal.App.2d 260 [63 Cal.Rptr. 252], appellant contends that the evidence does not support the order of dependency. In *Raya,* the facts were similar to ours. Poverty had prevented the mother from obtaining a divorce and marrying the man with whom she was living; the relationship with that man was "stable, not casual or promiscuous; . . ." (255 Cal.App.2d at p. 266.) The Court of Appeal held that this evidence was not sufficient by itself to support an adjudication of dependency under section 600, subdivision (a).[2] The court concluded, from an analysis of the purposes and history of the Juvenile Court Law in relation to the "dominant parental right to custody of the child," that "before section 600, subdivision (a), authorizes the drastic step of judicial intervention, some threshold level of deficiency is demanded. Although a home environment may appear deficient when measured by dominant socioeconomic

[2]Subdivision (a) provides that the court may adjudge any juvenile a dependent child who "is in need of proper and effective parental care or control and has no parent or guardian . . . willing to exercise or capable of exercising such care or control, . . ."

standards, interposition by the powerful arm of the public authorities may lead to .worse alternatives. A juvenile court may possess no magic wand to create a replacement for a home which falls short of ideal. California appellate decisions in wardship cases of the 'dependent child' variety demonstrate rather extreme cases of neglect, cruelty or continuing exposure to immorality. [Citations.]'' (255 Cal.App.2d at p. 265.) Those observations apply with equal or greater force in the present case, where jurisdiction was asserted on the ground that the home was unfit by reason of the ''depravity'' of the mother.

The juvenile court is constantly faced with the necessity of choosing in behalf of a child, the best of several not entirely satisfactory alternatives. It is seldom possible to make such a choice on the mechanical basis that the proof of some particular fact ''ipso facto'' calls for a predetermined response.

■ Here the court seemed to regard section 600 of the Welfare and Institutions Code as providing that the juvenile court *shall* adjudge dependency and order placement in a foster home or institution as an automatic consequence of a finding that the parent having custody is living in adultery. But the statute does not call for such a result; it actually provides that the court *may* adjudge dependency upon determining, e.g., that the child's ''home is an unfit place for him. . . .'' The further provision in subdivision (b) that unfitness may exist ''by reason of neglect, cruelty, or depravity'' limits and qualifies the term ''fitness''; that language does not create independent grounds for determining dependency.

This construction is not a mere play on words. ■ The Juvenile Court Law is designed not primarily for the reproof and improvement of erring parents; its purpose is to provide protection, guidance and discipline to children who, for the reasons mentioned in the statute, may become dependent upon the juvenile court acting *in loco parentis*. ■ The unfitness of a home for a particular child is a relative concept. It cannot be determined except by a judicious appraisal of all available evidence bearing on the child's best interests including, in this case, a consideration of the doubtful proposition that a foster home or institutional placement is likely to be more fit for a 13-year-old boy than a home with his own mother even though her marital arrangement is irregular. These considerations of course emerge again when the court, after adjudicating dependency, proceeds to determine place-

ment; but the initial determination of fitness of a home cannot be made without some preliminary attention to the same factors.

The evidence heard by the trial court was not sufficient to support a determination that the home was unfit; attention should have been given to the *relative* fitness of the home, based on some preliminary appraisal of the boy's needs.

The order is reversed.

Devine, P. J., and Rattigan, J., concurred.