[L.A. No. 30780. May 31, 1978.]

In re CARMALETA B. et al., Minors.
HOMER E. DETRICH, as Director, etc., Petitioner and Respondent, v.
CAROLYN B., Objector and Appellant.

**COUNSEL**

Paul Bell, under appointment by the Supreme Court, for Objector and Appellant.

Donald L. Clark, County Counsel, and D. Richard Rudolf, Deputy County Counsel, for Petitioner and Respondent.

Ralph B. Jordan, County Counsel (Kern), and Peter C. Carton, Deputy County Counsel, as Amici Curiae on behalf of Petitioner and Respondent.

**OPINION**

MANUEL, J.—Carolyn B. appeals from a judgment of the trial court declaring her five minor children free from her custody and control under section 232, subdivisions (a)(2) and (a)(6) of the Civil Code. We reverse.

The action was brought against Carolyn B. and her husband on June 23, 1975, by the San Diego County Department of Public Welfare pursuant to Civil Code section 232 for abandonment (Civ. Code, § 232, subd. (a)(1)), cruelty and neglect (Civ. Code, § 232, subd. (a)(2)), conviction of a felony (Civ. Code, § 232, subd. (a)(4)), and inability to properly support or control due to mental illness (Civ. Code, § 232, subd. (a)(6)). The department also sought to be appointed guardian of the minors under Civil Code section 239[1] until the children could be placed for adoption.

The record on appeal includes the written report of the juvenile probation officer and the reporter's transcript of the testimony of the deputy probation officer, the dependent child worker, the psychiatrist who interviewed the parents and the minors' mother. No findings were requested by parties and on October 3, 1975, the trial court granted the petition. The court's judgment declared: "IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Carmaleta [B.], Carlotta [B.], Clarence [B.], Clarenton [B.], and Carolyn [B.], . . . should be and are declared free from the custody and control of their mother Carolyn [B.], pursuant to Civil Code section 232, subdivisions (a)(2) and (a)(6),[2] and the legal father, Clarence [B.], pursuant to Civil Code section 232, subdivisions (a)(2), (a)(4) and (a)(6),[3] and said persons are hereby deprived of the custody and control of said . . . children."

---

[1]Section 239 provides: "If the court by order or judgment declares a minor . . . free from the custody and control of both parents under the provisions of this chapter, the court shall at the same time appoint a guardian of such minor. . . ." (See also *County of San Diego* v. *Superior Court* (1971) 20 Cal.App.3d 288 [97 Cal.Rptr. 630].)

[2]Section 232, subdivision (a)(2) provides in pertinent part that any person under the age of 18 years may be declared free from the custody and control of either or both parents, if such person "has been cruelly treated or neglected by either or both of his parents, . . . has been a dependent child of the juvenile court, and such parent or parents deprived of his custody for the period of one year prior to the filing of a petition praying that he be declared free from the custody and control of such cruel or neglectful . . . parents."

Section 232, subdivision (a)(6) provides in pertinent part that "any person under the age of 18 years" may be declared free from the custody and control of "either or both parents," if the "parent or parents are and will remain incapable of supporting or controlling the child in a proper manner because of mental deficiency or mental illness . . . ."

[3]See footnote 2 for section 232, subdivision (a)(2) and 232, subdivision (a)(6). Section 232, subdivision (a)(4) provides in pertinent part that "any person under the age of 18 years [may be] declared free from the custody and control of either or both parents," if the "parent or parents are convicted of a felony, if the facts of the crime of which such parent or parents were convicted are of such nature as to prove the unfitness of such parent or parents to have the future custody and control of the child."

Unless otherwise noted, all statutory references are to the Civil Code.

It is further provided that the department of public welfare was duly appointed guardian of the minors pending their adoption.

## THE FACTS

Mr. and Mrs. B. now have five children: Carmaleta, age nine; Carlotta, age eight; Clarence, Jr., age seven; Clarenton, age six; and Carolyn, age three. The minors first came to the attention of the juvenile authorities in July 1970 when staff at Mercy Hospital treated Clarence for a head injury similar to that suffered by his sister Carlotta the year before. A staff doctor notified the juvenile probation department of the circumstances surrounding Clarence's condition, as told to him by Mrs. B.'s sister who visited the child while he was hospitalized. Carlotta suffered physical damage as a result of her injury and Clarence is partially paralyzed and is reported to have no vision in the left eye.

It was not until June 1973, however, that the four older children, Carolyn having not yet been born, were removed from their parents' custody and declared dependent children of the San Diego County Juvenile Court. The probation officer's report states the wardships were ordered ". . . under the provision of then Section 600, subdivision (d)[4] of the Welfare and Institutions Code which permitted a child to be declared a dependent child . . . whose home [was] an unfit place for him by reason of neglect, cruelty . . . or physical abuse. . . ." The action was the result of a petition alleging that "the home was unfit because of the depravity and cruelty of the father in that during the period of 1973 [he] subjected or exposed the girls to sexual abuse or damage and that the mother failed to protect the girls . . . and that the father subjected or exposed the boys to physical abuse or damage."

Caseworkers also found that Mr. B. had been convicted of battery under section 242 of the Penal Code in 1970 for whipping a two-year-old boy that his wife was babysitting and that in 1975, he was convicted of an attempt to commit unlawful sexual intercourse with a fourteen-year-old girl in violation of Penal Code section 664.

---

[4]Section 600, (now § 300), then provided: "Any person under the age of 18 years who comes within any of the following descriptions is within the jurisdiction of the juvenile court.

". . . . . . . . . . . . . . . . . . .

"(d) Whose home is an unfit place for him by reason of neglect, cruelty, depravity, or physical abuse of either of his parents, or of his guardian, or other person in whose custody or care he is."

In 1973 dependency proceedings gave custody of the four children to Mrs. B. under the supervision of Mrs. B.'s mother in the mother's home in Washington, D.C. Three months after arriving in Washington, Mrs. B. gave birth to her fifth child Carolyn B. In March of 1974, Mrs. B. began psychiatric consultation at a local hospital and voluntarily underwent a short-term commitment. At this time she and her mother were having serious disagreements over the care of the children, and as a result of their disharmony, the Washington, D.C. juvenile authorities arranged for the four elder children to be returned to California. The children arrived in San Diego in March 1974, and were placed with foster parents on April 5, 1974.

Within a few weeks of the children's arrival, Mrs. B. returned to San Diego with her infant daughter and set up a separate residence away from her husband. On April 30, 1974, a month after her return, the department of public welfare succeeded in having the baby declared a ward of the court and a dependent child pursuant to then section 600, subdivision (a)[5] of the Welfare and Institutions Code for "any person under . . . age 18 who . . . has no parent . . . capable of exercising [proper parental] care . . ." apparently on the ground that Mrs. B. was incapable of protecting her from possible abuse by Mr. B. The baby was subsequently placed with the same foster parents as were her brothers and sisters.

Having lost custody of all the children and having no income, Mrs. B., on the advice of a social worker, went to live with her husband while she trained as a nurse's aide. Although she has made a few abortive attempts to move, Mrs. B. continues to reside with her husband.

In June 1975, just one year after the last child was placed in foster care, the department of public welfare pursuant to section 232.9[6] initiated this petition to free the minors from the custody and control of their parents. It is from the ensuing judgment under section 232, subdivisions (a)(2) and (a)(6), herein described, that Mrs. B. appeals.

[5]Section 600 provides: "Any person under the age of 18 years who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge such person to be a dependent child of the court. (a) Who is in need of proper and effective parental care or control and has no parent or guardian, or has no parent or guardian willing to exercise or capable of exercising such care or control, or has no parent or guardian actually exercising such care or control."

[6]Section 232.9 provides in pertinent part, that such a department "which is planning adoptive placement of a child with a licensed adoption agency, or the State Department of Social Welfare acting as an adoption agency . . . may initiate an action under Section

Parenting is a fundamental right, and accordingly, is disturbed only in extreme cases of persons acting in a fashion incompatible with parenthood. Thus, the court in *In re T. M. R.* (1974) 41 Cal.App.3d 694, 703 [116 Cal.Rptr. 292], held: "The relationship of . . . natural parent . . . [and] . . . children is a vital human relationship which has far-reaching implications for the growth and development of the child. (See Kay & Phillips, *Poverty and the Law of Child Custody* (1966) 54 Cal.L.Rev. 717.) Thus, the involuntary termination of that relationship by state action must be viewed as a drastic remedy which should be resorted to only in extreme cases of neglect or abandonment." (*Lois R.* v. *Superior Court* (1971) 19 Cal.App.3d 895 [97 Cal.Rptr. 158]; *In re J. T.* (1974) 40 Cal.App.3d 633 [115 Cal.Rptr. 553]; *In re Raya* (1967) 255 Cal.App.2d 260, 265 [63 Cal.Rptr. 252]; *In re A. J.* (1969) 274 Cal.App.2d 199, 202 [78 Cal.Rptr. 880]; *Stanley* v. *Illinois* (1972) 405 U.S. 645 [31 L.Ed.2d 551, 92 S.Ct. 1208].)

█ Our decision in *In re B. G.* (1974) 11 Cal.3d 679 [114 Cal.Rptr. 444, 523 P.2d 244], emphasized the gravity of this right, holding that the doctrine preferring parental custody was not affected by the enactment of section 4600 except to focus "attention not on the unfitness of the parent but the detriment to the child. (See *Guardianship of Marino, supra,* 30 Cal.App.3d 952, 958 [106 Cal.Rptr. 655])." (11 Cal.3d 698.) *B. G.* permits custody to go to nonparents ". . . only upon a clear showing that such award is essential to avert harm to the child." (11 Cal.3d p. 699.)

In light of this legislative and judicial policy, we must determine if the trial court's findings under subdivisions (a)(2) and (a)(6) were supported by substantial evidence such that the situation contemplated by the statute arises, and severing the parental relationship becomes the least detrimental alternative for the children. (*In re D. L. C.* (1976) 54 Cal.App.3d 840, 850 [126 Cal.Rptr. 863]; *In re Eugene W.* (1972) 29 Cal.App.3d 623, 629 [105 Cal.Rptr. 736]; Goldstein et al., Beyond the Best Interests of the Child (1973).)

232 to declare a child free from the custody and control of his parents. The fact that a child is in a foster care home . . . shall not prevent the institution of such an action by any such agency or by a licensed adoption agency pursuant to Section 232. [The state Department of Social Welfare is now the Department of Health. (Welf. & Inst. Code, § 21.)] If, at the time of the filing of a verified petition by any department or agency specified in this section, the child is in the custody of the petitioner, such petitioner may continue to·have custody of the child pending the hearing on the petition . . . [in] the court['s] . . . discretion . . . ."

### THE SECTION 232, SUBDIVISION (a)(6) FINDING—INABILITY DUE TO MENTAL ILLNESS.

Section 232 (see fn. 3, *ante.*) provides that "[a]n action may be brought for the purpose of having any person under the age of 18 years declared free from the custody and control of either or both of his parents when such person comes within any of the following descriptions . . . (6) [Person] [w]hose . . . parents are, and will remain incapable of supporting or controlling the child . . . because of mental deficiency or . . . illness."

The court impliedly found that Mrs. B. ". . . [was] and [would] remain incapable of supporting or controlling the [children] in a proper manner because of mental . . . illness" under subdivision (a)(6) of the statute. ■ Mentally ill persons under section 232 have been judicially defined as those persons "(a) [w]ho are of such mental condition that they are in need of supervision, treatment, care or restraint" or "(b) [w]ho are of such mental condition that they are dangerous to themselves or to the person or property of others. . . ." (*In re Baby Boy T.* (1970) 9 Cal.App.3d 815, 820 [88 Cal.Rptr. 418]; see also *In re Eugene W., supra,* p. 628, fn. 2.)[7] Kern County Welfare Department, as amicus curiae, urges the obsolescence of this definition and suggests that this court adopt a broader interpretation of mental illness consistent with what it deems the implications of sections 232.5, 237, and 232, subdivision (a)(7), emphasizing the welfare of the child. We decline the invitation to reinterpret the meaning of mental illness under the statute.

Notwithstanding that on reenactment or amendment[8] the Legislature is presumed to have adopted the judicial construction of statutory language

---

[7]The court in *In re Eugene W.* states at page 628, footnote 2: "At the time of the enactment of Civil Code section 232, Welfare and Institutions Code section 5590, provided that 'mentally deficient persons' mean those persons who are incapable of managing themselves or their affairs independently, with ordinary prudence, and who require supervision, control and care for their own welfare, or for the welfare of others or for the welfare of the community. At the same time, Welfare and Institutions Code section 5550, defined 'mentally ill persons' as those who come within either or both of the following descriptions: (a) who are of such mental condition that they are in need of supervision, treatment, care or restraint; (b) who are of such mental condition that they are dangerous to themselves or to the person or property of others, and are in need of supervision, treatment, care or restraint. As the court pointed out in *In re Baby Boy T.* (1970) 9 Cal.App.3d 815, 820 [88 Cal.Rptr. 418], in using the terms 'mental deficiency' and 'mental illness' in Civil Code, section 232, the legislative intent was to embody the concept then set forth in Welfare and Institutions Code sections 5590 and 5550, respectively."

[8]Section 232 was amended several times after the 1970 decision in *In re Baby Boy T.* was rendered; such amendments occurred, e.g., in 1971, 1972, 1973, 1976 and 1977.

(*People* v. *Hallner* (1956) 43 Cal.2d 715 [277 P.2d 393]; *Perry* v. *Jordan* (1949) 34 Cal.2d 87 [207 P.2d 47]; *People* v. *Curtis* (1969) 70 Cal.2d 347 [34 Cal.Rptr. 713, 450 P.2d 33]; *Ladd* v. *Board of Trustees* (1972) 23 Cal.App.3d 984 [100 Cal.Rptr. 571]), amicus suggests no cogent reason for altering the definition that is now incorporated in the legislative scheme. Its brief asks for the meaning of mental illness to be liberalized to facilitate the termination of the parental relationship where the parents are demonstrably incapable of providing proper care but are nevertheless not so incapacitated as to require ". . . supervision, treatment . . . or restraint." The courts in *In re Baby Boy T., supra,* 9 Cal.App.3d 815 and *In re Eugene W., supra,* 29 Cal.App.3d 623, have upheld the existing definition, and the tenor of their opinions is consistent with the proposition that family rights, both the parent's and the child's rights, should not be vulnerable to a too easy finding of mental illness. Indeed, the strictness of this definition of mental illness has acted as a safeguard to protect the primacy of the family. Moreover, although it can be argued that the present standard prevents severance in some cases where the parents may be incapable of providing proper care, it is evident that any significant harm to the child's welfare can be adequately addressed by subdivision (a)(7).

Section 232, subdivision (a)(7) provides that a child may be freed from parental custody and control "[w]ho has been cared for in one or more foster homes . . . for two or more consecutive years, . . . [if] the court finds by clear and convincing evidence that return of the child to his parent[s] . . . would be detrimental to the child. . . ."[9]  ▇  The section, accordingly, balances the interests of the child in secure and sufficient parenting with the conjoined interests of both parent and child in preserving the familial bond. The subdivision has the added advantage of permitting the

---

[9]Section 232 provides: "(a) An action may be brought for the purpose of having any person under the age of 18 years declared free from the custody and control of either or both of his parents when such person comes within any of the following descriptions:

". . . . . . . . . . . . . . . . .

"(7) Who has been cared for in one or more foster homes under the supervision of the juvenile court, the county welfare department or other public or private licensed child-placing agency for two or more consecutive years, providing that the court finds by clear and convincing evidence that return of the child to his parent or parents would be detrimental to the child and that the parent or parents have failed during such period, and are likely to fail in the future, to (i) Provide a home for said child; (ii) Provide care and control for the child; (iii) Maintain an adequate parental relationship with the child; and (iv) Maintain continuous contact with the child, unless unable to do so. Physical custody of the child by the parent or parents for insubstantial periods of time during the required two-year period will not serve to interrupt the running of such period."

parents a longer period, two years, in which to rehabilitate themselves to a position whereby they can properly support this most fundamental responsibility. Such an accommodation, inherent in the structuring of section 232, affords the fullest opportunity to the parents for exercise of their rights not inconsistent with the ultimate best interests of the child. Accordingly, amicus' proposed definition of mental illness appears unnecessary to achieve the purpose of the statute in securing the welfare of the child; considering the fundamental interests here involved, we should not, in the absence of language clearly expressing such a standard, so interpret the statute.

In the instant case, there is insufficient evidence to show Mrs. B. was mentally ill under the standard of *In re Baby Boy T., supra,* 9 Cal. App.3d 815 and *In re Eugene W., supra,* 29 Cal.App.3d 623. The evidence of her mental condition was contained in the probation officer's report and testimony which anticipated the psychiatric evaluation and the testimony of one of the examining psychiatrists. The report stated: "Mrs. [B.] comes across as a well-meaning individual who is emotionally too weak to [properly] care for her children." Dr. Vargas, the psychiatrist corroborated this assessment at the hearing. He said that mental illness was "any type of mental disorder which incapacitates an individual to live normally . . ." continuing, that he and his colleagues thought that Mrs. B. was suffering from mental illness in that sense, and, because of her inability to cope with stress situations, she would be unable to take care of the children.

However, both Ms. Bell and Dr. Vargas acknowledged that their conclusions of her mental condition were based on Mrs. B.'s neglect in failing to prevent the injuries that resulted in the children being made wards of the court, and her purported "inability to cope" in Washington, D.C. Ms. Bell, the author of the report, said she had never met Mrs. B., and Dr. Vargas said his judgment of her mental condition was made from an hour interview and her past history. Moreover, Dr. Vargas verified on cross-, and recross-examination that he had only seen Mrs. B. once, and that her establishing a separate residence apart from Mr. B. with welfare assistance and guidance ". . . could be tried," thereby conceding that whatever the classification of her mental state, Mrs. B.'s problems constituted no immediate danger to herself or her children. Clearly, under such a showing, it could not be said that Mrs. B. "was and would remain incapable of supporting or controlling her children" according to this subdivision. There was, therefore, no substantial evidence for a finding that Mrs. B. was mentally ill, and the trial court erred to the extent it based its decision to grant the petition on this ground.

## THE SECTION 232, SUBDIVISION (a)(2) FINDING—NEGLECT

The court's second finding supporting the section 232 petition was that the children had been ". . . cruelly treated or neglected, by [their] parents . . ." under subdivision (a)(2) of section 232. Mrs. B. urges that the court's finding against her under the provision was unsupported by substantial evidence because this determination, like the probation officer's and the psychiatrist's testimony, was predicated solely on the acts which initially caused the wardship proceedings.

■ It is well settled that an order to free a child from parental custody and control must rest on present circumstances as well as past acts although such prior acts are evidence which may be considered by the court in deciding whether there is sufficient showing to justify the order. (*In re Morrow* (1970) 9 Cal.App.3d 39, 54, 56 [88 Cal.Rptr. 142]; *In re Zimmerman* (1962) 206 Cal.App.2d 835, 844-845 [24 Cal.Rptr. 329]; *In re Cardenas* (1961) 194 Cal.App.2d 849, 855 [15 Cal.Rptr. 238]; *In re Williams* (1955) 133 Cal.App.2d 515 [284 P.2d 510].) In court proceedings held June 23, 1973, the department of public welfare's petition alleging Mr. B.'s physical and sexual abuse of the children and Mrs. B.'s failure to protect them, was granted and the children were declared dependent children of the court under then Welfare and Institutions Code section 600, subdivision (d), providing for such wardship where a minor's home ". . . is an unfit place for him by reason of neglect, cruelty, depravity or physical abuse. . . ."

■ Under the principles of collateral estoppel, Mrs. B. may be precluded from denying the truth of the findings of the dependency proceeding that she failed to protect the children (*Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807; 807, 811, 813 [122 P.2d 892]); however, "inquiry into the issue of cruelty or neglect [in a section 232 action] is not foreclosed by the order making the minor a dependent child of the juvenile court. *In re Williams* [1962] 133 Cal.App.2d 515 . . . 518[.]" (*In re Morrow* (1970), *supra,* 9 Cal.App.3d 39 at p. 54; see also *Louis Stores, Inc.* v. *Department of Alcoholic Beverage Control* (1962) 57 Cal.2d 749, 757 [22 Cal.Rptr. 14, 371 P.2d 758].)

The court in *In re Zimmerman, supra,* 206 Cal.App.2d 835, 842, reviewed the distinction between a petition to declare children wards of the juvenile court (now dependent children) where the issue was actual custody and a proceeding to have the children declared free of the

custody and control of the parent where the mother stood to lose all her parental rights; it held: "We do not think that such proceedings to free a child from parental control have been invested by the Legislature with the rigid and inflexible character that appellants ascribe to them. It is clear to us that the court's consideration of the matter must proceed beyond the point of concluding merely that the mother was deprived of the custody of her child for moral depravity and that the period of a year has elapsed. The court in the instant proceedings is not finalizing an antecedent interlocutory judgment." (206 Cal.App.2d 843.)

Mrs. B. was therefore "entitled to have the circumstances leading to the [dependency] order[s] reviewed in the light of subsequent events, and with consideration of the nature of the order sought in [this proceeding]. . . . It [was] reasonable to consider under subdivision (b) [of section 232] whether the conditions which gave rise to the . . . neglect still persist[ed]." (*In re Morrow* (1970) *supra,* 9 Cal.App.3d 39, 55-56; *In re Susan M.* (1975) 53 Cal.App.3d 300 [125 Cal.Rptr. 707]; *In re Gano* (1958) 160 Cal.App.2d 700 [325 P.2d 485].) The record indicates, however, that the trial judge did take Mrs. B.'s present circumstances into account before making his decision. At the hearing, in response to questions by counsel and the court, Mrs. B. testified to, and the probation officer's report corroborated, her efforts to resolve her personality problems, and to train for employment so she might, with the supportive services of the department of public welfare, regain custody. Such a showing, absent any contrary evidence by Mrs. B., suggests her current circumstances were weighed in the court's decision.

Nevertheless, there was evidence to support the court's conclusion of neglect for four of the five children. The mandatory conditions of section 232, subdivision (a)(2) (a child made a ward of the court because of cruel or neglectful treatment whose parents have been deprived of custody for one year), were satisfied for these children. Moreover, although much of the testimony of the probation officer and the psychiatrist admits to being based on case files with only a brief interview or phone conversation, this evidence, and the evidence of Mrs. B.'s psychological difficulties in Washington, D.C., while insufficient to show mental illness, temper her showing of rehabilitation and capability to undertake the children's care. Indeed, petitioner's own testimony that she never feared for the safety of the children around their father, a convicted sex offender, may have properly convinced the trial court that Mrs. B. did not appreciate the necessity of keeping the children apart from Mr. B. and therefore could not be relied upon to live away from him if the children were returned to

her care. Such issues of fact and credibility presented questions for the trial court (*In re Morrow, supra,* 9 Cal.3d 39, 57; *In re D. L. C.* (1976), *supra,* 54 Cal.App.3d 840, 843), and we cannot say that there was not substantial evidence to support the order declaring the four older children free from the custody and control of their mother under section 232, subdivision (a)(2). ■ We hold, however, that no cruelty or neglect has been proven as to Carolyn B. who was born after the abuse which resulted in the dependency of the other children, and who was made a ward of the court under a different dependency subdivision. (Cf. *In re J. T.* (1974) 40 Cal.App.3d 633, 638 [115 Cal.Rptr. 553]; *In re Baby Boy T., supra,* 9 Cal.App.3d 815, 819.)

## The Section 4600 Finding Of Detriment

Since the mental illness ground is unsupported by the evidence, and therefore cannot be used to sever the parental relationship to all of the children, and since the neglect ground is supported only as to four of the five children, we conclude that the case must be remanded to the trial court for a determination of the finding of detriment and a redetermination of whether the section 232 petition should be granted.

Section 4600[10] requires: "Before the court makes any order awarding custody to a person or persons other than a parent, without the consent of the parents, it shall make a finding that an award of custody to a parent would be detrimental to the child, and the award to a nonparent is required to serve the best interests of the child. . . ." ■ Our decision in *In re B. G.,* held section 4600 applied to all cases where custody of children was in issue, and it requires a finding by the court that placement away from the parent ". . . is *essential* to avert harm to the

---

[10]Section 4600 states in full: "In any proceeding where there is at issue the custody of a minor child, the court may, during the pendency of the proceeding, or at any time thereafter, make such order for the custody of such child during his minority as may seem necessary or proper. If a child is of sufficient age and capacity to reason so as to form an intelligent preference as to custody, the court shall consider and give due weight to his wishes in making an award of custody or modification thereof. Custody should be awarded in the following order of preference.

"(a) To either parent according to the best interests of the child.

"(b) To the person or persons in whose home the child has been in a wholesome and stable environment.

"(c) To any other person or persons deemed by the court to be suitable and able to provide adequate and proper care and guidance for the child.

"Before the court makes any order awarding custody to a person or persons other than a parent, without the consent of the parents, it shall make a finding that an award of custody to a parent would be detrimental to the child, and the award to a nonparent is required to serve the best interests of the child."

child. . . ." (Italics added.) (11 Cal.3d 679, at p. 699.) This finding of detriment has been required in section 232 cases. (*In re B. G., supra,* 11 Cal.3d 679; *In re D. L. C.* (1976) *supra,* 54 Cal.App.3d 840; *In re T. M. R.* (1974) 41 Cal.App.3d 694 [116 Cal.Rptr. 292]; *In re Susan M., supra* (1975) 53 Cal.App.3d 300.) In the instant case, the trial court, without such express finding, declared the children free of their parents' custody and control, basing its decision on three subdivisions of section 232, of which only subdivisions (a)(2) and (a)(6) are in issue.

In a case such as this where fundamental rights are affected by the exercise of discretion by the trial court, we recognize that such discretion can only be truly exercised if there is no misconception by the trial court as to the legal basis for its action. Thus, where, as here, some of the grounds for the trial court's action have been determined on appeal to be supportable and other grounds unsupported, the matter should be remanded for the trial court's redetermination of the ultimate issue on the proper grounds. (*Bonham* v. *McConnell* (1955) 45 Cal.2d 304, 306 [288 P.2d 502]; *Byrd* v. *Savage* (1963) 219 Cal.App.2d 396, 402 [32 Cal.Rptr. 881]; *Andrews* v. *Cunningham* (1955) 105 Cal.App.2d 525, 529 [233 P.2d 563].) Had the court concluded that Mrs. B. was not mentally ill and that the judgment would separate the siblings, it may well have come to a different result on the question of whether the order would constitute the least detrimental alternative for the children. We cannot say that the erroneous findings were surplusage (see *Brewer* v. *Simpson,* 53 Cal.2d 567 [2 Cal.Rptr. 609, 349 P.2d 289]) or that there is "no real doubt" in the absence of the erroneous findings. (See *Byrd* v. *Savage, supra.*)

Accordingly, we reverse the judgment as to Mrs. B. and remand for new trial.

Bird, C. J., Tobriner, J., Mosk, J., Clark, J., Richardson, J., and Newman, J., concurred.

Appellant's petition for a rehearing was denied June 29, 1978, and the judgment was modified to read as printed above.