[Civ. No. 18513. Fourth Dist., Div. One. June 7, 1979.]

In re NICOLE B., a Person Coming Under the Juvenile Court Law.
MICHAEL D. GARVEY, as Chief Probation Officer, etc., Plaintiff and Respondent, v.
SYLVIA B., Defendant and Appellant.

**COUNSEL**

Leif F. Tessem, under appointment by the Court of Appeal, for Defendant and Appellant.

Edwin L. Miller, Jr., District Attorney, Peter G. Lehman and George J. Du Borg, Deputy District Attorneys, for Plaintiff and Respondent.

Sandra Morris for Minor.

**OPINION**

**COLOGNE, J.**—Nicole B. was declared a person described by Welfare and Institutions Code section 300, subdivision (d),[1] and placed in the

---

[1]Formerly section 600, subdivision (d). All references will be to the Welfare and Institutions Code unless otherwise designated.

home of her mother under the supervision of the Director of the San Diego County Department of Welfare. The mother appeals this order. The only issue is whether the facts stipulated to by all the parties are sufficient, as a matter of law, to support the court's assuming jurisdiction.

The stipulated facts are brief and are restated here in full: "That on August 7, 1978, JOSEPH CIEN, struck NICOLE B. with a closed fist on the right arm and leg. That when the Officer examined the child, her face appeared to be swollen around the eyes, the nose and both sides of her jaw and said child indicated that JOSEPH CIEN hit her so hard in the stomach that she could not breathe. That this activity took place in a park.

"IT IS FURTHER STIPULATED:

"1. The physical abuse described in these facts is the type which is contemplated in Welfare & Institutions Code Section 300(d).

"2. That after this incident, JOSEPH CIEN was taken to the Veterans Administration Hospital Psychiatric Ward.

"3. That NICOLE B.'s mother, SYLVIA B., had no knowledge of this physical abuse.

"4. That during this incident, SYLVIA B. was doing errands.

"5. That SYLVIA B. had known JOSEPH CIEN for approximately six months and he had been residing in her house for approximately the last three months.

"6. That JOSEPH CIEN no longer resides with SYLVIA B. and is not allowed to come in or about the residence."

As it applies to this proceeding, section 300 reads: *"Any person under the age of 18 years who comes within any of the following descriptions is within the jurisdiction* of the juvenile court which may adjudge such person to be a dependent child of the court:

"(a) Who is in need of proper and effective parental care or control and has no parent or guardian, or has no parent or guardian willing to

exercise or capable of exercising such care or control, or has no parent or guardian actually exercising such care or control.

"(b) Who is destitute, or who is not provided with the necessities of life, or who is not provided with a home or suitable place of abode.

"(c) Who is physically dangerous to the public because of a mental or physical deficiency, disorder or abnormality.

"(d) *Whose home is an unfit place for him by reason of* neglect, cruelty, depravity, or *physical abuse* of either of his parents, or of his guardian or *other person in whose custody or care he is.*" (Stats. 1976, ch. 1068; see sec. as amended by Stats. 1978, ch. 539; italics added.)

■ Under subdivision (d) of section 300, the jurisdiction of the juvenile court extends to any person whose home is unfit by reason of certain conditions. The fitness of the parent is not, under this subdivision, in issue as it might be in a proceeding under section 300, subdivision (b) (cf. *In re Robert P.,* 61 Cal.App.3d 310, 316-317 [132 Cal.Rptr. 5]). In addition, the use of the present tense verb indicates an intent the unfitness exists at the time of the hearing; however, past events can aid in a determination of present fitness (*In re Melissa H.,* 38 Cal.App.3d 173, 175 [113 Cal.Rptr. 139]). The potential return and resumption of residence in the home by the person responsible for making it unfit justifies the determination the best interests of the child would be served by making her a ward of the court (*In re Melissa H., supra,* at p. 175, with citation).

In *Melissa H.,* the stepfather had sexually assaulted the child and the home was found to be unfit. The stepfather stated, however, he hoped to be reunited with his family. The minor was declared a dependent and placed under the control and custody of the Welfare Department which placed her in the mother's home. The court said: "The lower court's order was clearly based upon the stepfather's past actions and future intentions, and not upon any action or status of the mother. Since the order only 'affected' parental custody and control, as opposed to severing the parental relationship completely [citations], the state's interest in providing for the best interests of the child justified any limited intrusion on the mother's right to maintain legal custody [citation]." (*In re Melissa H., supra,* at p. 175.)

■ Here we have a similar unfitness of the home, though the person causing the abuse has not expressed his intent to return as in *Melissa H.*

However, there is nothing in the record indicating he has expressed a willingness not to return and the close association with Sylvia in the past provides a basis for inferring there is a potential he may return. The evidence must be viewed in the light most favorable to the lower court's ruling, and we must indulge in all reasonable inferences to support the findings of the juvenile court (*In re Robert P., supra,* 61 Cal.App.3d 310, 315; *In re Luwanna S.,* 31 Cal.App.3d 112, 114 [107 Cal.Rptr. 62]). Accordingly, the lower court's determination the home is unfit based on past acts indicating his potential return must be affirmed.

■ The court's involvement in wardship matters is not necessarily based on a parent's wrongdoing. It is the welfare of the child which is of paramount concern (*In re Raya,* 255 Cal.App.2d 260, 264 [63 Cal.Rptr. 252]; see also *In re Florance,* 47 Cal.2d 25, 28 [300 P.2d 825]). The Legislature has provided four instances in which a court may, but is not required to, assume jurisdiction over a minor (see *In re A. J.,* 274 Cal.App.2d 199, 202 [78 Cal.Rptr. 880]). Not all of these involve the parent's misconduct, neglect, or inability to control the minor. Subdivision (a) deals with the absence of a parent or his failure to provide care and control. Subdivision (b) provides the court jurisdiction if the child is destitute, or is not provided the necessities of life, a home or a place of abode, without reference to a parent's actions. Thus, one parent who has the custody of the child may fail in this respect and the court would have jurisdiction, though the other parent is ready, willing and able to respond. Subdivision (c) provides authority for the court to assume jurisdiction where the child is physically dangerous to the public, again without a showing of fault on the part of a parent.[2] Subdivision (d) would give the court jurisdiction if there is a physical abuse of a child by a person in whose custody or care he is. This does not require the parent to be guilty of some wrongdoing or to have knowledge of a threat and we cannot read it into the statute.

The authority of the court to assume jurisdiction is based on a determination that one of these apparent exigent circumstances exists, indicating the minor may be in need of assistance. ■ The court stated in *In re A. J., supra,* 274 Cal.App.2d 199 at page 202: "The Juvenile Court Law is designed not primarily for the reproof and improvement of erring parents; its purpose is to provide protection, guidance and discipline to

---

[2]See *In re Randy B.,* 62 Cal.App.3d 89, 98 [132 Cal.Rptr. 720], where the court held the fact the mother had a "genuine love and concern for her child and sought help for him and herself does not alter the fact that his special problems and her limitations made it detrimental for Randy to remain in her custody."

children who, for the reasons mentioned in the statute, may become dependent upon the juvenile court acting *in loco parentis.* The unfitness of a home for a particular child is a relative concept. It cannot be determined except by a judicious appraisal of all available evidence bearing on the child's best interests . . . . These considerations of course emerge again when the court, after adjudicating dependency, proceeds to determine placement; but the initial determination of fitness of a home cannot be made without some preliminary attention to the same factors."

In *In re B. G.,* 11 Cal.3d 679 [114 Cal.Rptr. 444, 523 P.2d 244], the Supreme Court held the juvenile court had jurisdiction over the children, though the mother, a resident of Czechoslovakia, had done no wrong. The court originally asserted jurisdiction simply because the mother was absent[3] and the role of some person *in loco parentis* was required. In *B. G.,* the court said: "Thus, prior to the enactment of the Family Law Act in 1969, the decisions had held that an award denying custody to the parent in favor of a nonparent could stand only if the parent had been proven to be unfit. As we shall show, with the enactment of the Family Law Act, the standard of unfitness was dropped and the Legislature created the new rule that in order to award custody of a child to a nonparent the court was required to render a finding that an award to a parent would be 'detrimental to the child' and that such an award to a nonparent was 'required to serve the best interests of the child.' " *(In re B. G., supra,* 11 Cal.3d 679, 694-695.) Can we be any more demanding when we seek only to put the court *in loco parentis* and are not denying the mother actual custody? (Cf., *In re B. G., supra,* 11 Cal.3d 679; see *In re Melissa H., supra,* 38 Cal.App.3d 173, 175.)

The wrongdoing of a parent is not the real concern of the court in this phase of the hearing (see *People* v. *Aadland,* 193 Cal.App.2d 584, 591-592 [14 Cal.Rptr. 462]). It must be conceded a dominant potential right to custody of the child pervades our law (see Prob. Code, § 1407; Civ. Code, § 197; *Roche* v. *Roche,* 25 Cal.2d 141, 143-144 [152 P.2d 999]), and the earlier cases have demonstrated a rather extreme case of neglect, cruelty

---

[3]It should be noted the court also found a failure to give the mother notice of the hearing would have been a fatal defect had there not been a waiver of the defect. *B. G.* dealt with a proceeding which would be under new section 300, subdivision (a) (i.e., no parent present) rather than section 300, subdivision (d) (i.e., physical abuse). The Supreme Court concluded the later presence of the parent did not, per se, deprive the juvenile court of jurisdiction. Rather, the court held that once jurisdiction is acquired, it continues as long as the best interests of the minor so require; and the parent may only *petition for modification, change, or termination of the dependency status* (see former § 778, now § 388; see also § 301).

or continuing exposure to immorality must be present before the court may take the drastic step of judicial intervention (*In re Raya* (1967) *supra,* 255 Cal.App.2d 260, 265). In more recent years, however, the Legislature has clarified this "threshold level of deficiency"[4] where there is evidence of child abuse. The provisions of the Family Law Act enacted in 1969 (Civ. Code, § 4600 et seq.) offered some direction for the court. Even more specifically, in 1971 it added the language of subdivision (d) in this section of the code and in 1976 stated further: "Where the court finds, based upon competent professional evidence, that an injury, injuries, or detrimental condition sustained by a minor, of such a nature as would ordinarily not be sustained except as the result of the unreasonable or neglectful acts or omissions of either parent, the guardian, or other person who has the care or custody of the minor, such evidence shall be prima facie evidence that the minor's home is an unfit place for him by reason of the physical abuse of him by either of his parents, his guardian, or other person who has the care or custody of said minor, and such proof shall be sufficient to support a finding that the minor is described by subdivision (d) of Section 300." (§ 355.4; see also § 355.6.) It should be noted the Legislature's concern is for the child's well-being, not his social, economic or moral condition. (Cf. *In re Raya, supra*; *In re A. J., supra,* 274 Cal.App.2d 199.) The Legislature's interest in protecting children where there is evidence of child abuse is noted in other areas of the law (see Pen. Code, § 11161.5).

■ In assuming jurisdiction under the circumstances of this case, the court is not required to examine the fitness of the mother.[5] It is enough Nicole suffered physical abuse at the hands of one "in whose . . . care" she was. We are not given all details of the physical abuse the child suffered, but clearly it was substantial in view of the stipulation this was the type of physical abuse contemplated in section 300, subdivision (d). Cien hit Nicole with a closed fist, her eyes, nose and face were swollen and she was hit so hard in the stomach she could not breathe. The court cannot close its eyes to this sort of extreme physical abuse of a child. There is no question Nicole was in Cien's care when the abuse occurred. The stipulation provides a basis for finding the home is "unfit" and the court should concern itself with the fact no stipulation assures the child

---

[4]See *In re Raya* (1967) *supra,* 255 Cal.App.2d 260, 265.

[5]To be distinguished, of course, are proceedings under Civil Code section 232, subdivisions (a)(2) and (a)(6), where the child is to be declared free from the custody and control of the parent (see *In re Carmelita B.,* 21 Cal.3d 482, 489 [146 Cal.Rptr. 623, 579 P.2d 514]). This sort of a permanent termination of rights requires evidence of a different nature.

will not be subjected to similar abuse in the future. The evidence is clearly sufficient to make a prima facie case and as surely as in situations to which section 355.4 applies the burden of producing evidence shifted (see § 355.6). No evidence weakened or erased this prima facie case. It cannot be said as a matter of law the court abused its discretion by assuming jurisdiction in this matter.

Having obtained jurisdiction, the court then must consider disposition of the child.[6] The mother was awarded physical custody on the condition she would no longer have contact with Cien. It is likely the child will not be removed from her family home if all goes as is now presumed. In reading the probation report, however, we can understand why the court would want to continue jurisdiction and keep a watchful eye on the child. It can be inferred from the fact the three were living together for some time the mother must have had some inkling of Cien's violent propensities. For the best interests of this child, it was appropriate to keep the home under some observation by a responsible agency. There was no abuse of discretion for the court to proceed as it did for the best interests of this child.

■ In response to the mother's assertion concerning the proper standard of proof to be applied, we need only point out it is now well established in cases of this sort, where the parent is not deprived of custody in favor of a nonparent, the correct standard for both jurisdictional and dispositional purposes is proof by a preponderance of the evidence (§ 355; *In re Christopher B.,* 82 Cal.App.3d 608, 616-618 [147 Cal.Rptr. 390]; *In re Lisa D.,* 81 Cal.App.3d 192, 196 [146 Cal.Rptr. 178]).

Judgment affirmed.

Brown (Gerald), P. J., and Wiener, J., concurred.

---

[6]It was at this state of the proceedings the court first considered the probation officer's report which went into greater detail on the frequency and extent of Cien's physical abuse of the child.