[Civ. No. 69783. Second Dist., Div. Six. Aug. 6, 1984.]

In re JOHN B., a Person Coming Under the Juvenile Court Law.
COUNTY OF SANTA BARBARA, Plaintiff and Respondent, v.
DIANE E., Defendant and Appellant.

**COUNSEL**

Dawn Tilman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kenneth L. Nelson, County Counsel, Marvin Levine, Chief Assistant County Counsel, and Mary Ellen Barilotti, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

ABBE, J.—Appeal from a juvenile court disposition order in a case filed under Welfare and Institutions Code section 300, subdivision (a).[1] Appellant, who is the mother of the dependent minor in this matter, argues a twofold abuse of discretion by the court in that: (1) it failed to order reunification services and referred the child for permanency planning, despite the statutory mandate that the court order such services, and (2) it restricted appellant's visitation with the child to one supervised visitation per month, despite the statutory mandate that limitations on parental control not exceed those necessary to protect the child. (§ 361.) We find that the applicable law requires the juvenile court to order reunification services in this case and reverse.

Appellant has an extensive history of psychiatric problems. She has been hospitalized for treatment and evaluation numerous times over the past 12 years. Her mental disorder has been diagnosed as schizophrenia, paranoid type. Since 1980, appellant's conduct has taken on a criminal dimension. She has been arrested repeatedly on a variety of charges: vandalism, disturbing the peace, trespassing, burglary, petty theft, making annoying telephone calls, jaywalking and obstructing traffic, reporting a false fire alarm, and receiving stolen property.

During August of 1982, appellant, who was then pregnant, was committed to Camarillo State Hospital for psychiatric examination. According to the protective services report, "Santa Barbara County Mental Health had concerns about her being able to adequately care for her own health and that of her unborn child and conservatorship proceedings were initiated." Appellant left the hospital without authorization for a second time on October 24, 1982, when she was seven months pregnant. Her son, John B., was born on January 5, 1983, in Eureka, California.

Appellant came to the attention of Humboldt County Protective Services because of her unusual behavior at a hospital following her son's birth. She was there under an assumed name and would leave the baby unattended and wander off to talk to strangers. It was then discovered she had left Camarillo

---

[1]All further statutory references are to Welfare and Institutions Code unless otherwise specified. Section 300 provides in pertinent part: "Any person under the age of 18 years who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge such person to be a dependent child of the court: [¶] (a) Who is in need of proper and effective parental care or control and has no parent or guardian, or has no parent or guardian willing to exercise or capable of exercising such care or control, or has no parent or guardian actually exercising such care or control. . . ."

State Hospital without permission and there was an outstanding warrant issued for her for a probation violation.

Appellant was taken into police custody and incarcerated in the Humboldt County jail on January 26, 1983. The minor was placed in a emergency shelter care home. A petition to have the infant declared a dependent of the juvenile court was filed in Humboldt County in February of 1983. The petition was sustained and the case transferred to Santa Barbara County, the mother's residence, for disposition.

The report of the protective services worker to the court revealed that appellant's three older children had been declared dependents in 1978. They were permanently placed in nonmaternal custody in 1981 and 1982 when reunification efforts ". . . proved fruitless due to her deteriorating mental state." According to the report: "Numerous conservatorships have been filed on her but she seldom stays around long enough for them to be finalized. Her obvious psychiatric problems make it difficult for her to remain in jail yet she frequently leave [sic] State Hospital Commitments AWOL."

It was the opinion of the protective services worker that a reunification plan would be futile in view of ". . . the minor's mother's history of psychiatric problems, her hospitalizations, her criminal activities, her continuous refusal of psychiatric treatment and her failure to be reunited with her three older children despite the assistance of social services to work toward reunification over a period of years. . . ."

On April 25, 1983, appellant's son was adjudged to be a dependent child of the juvenile court and he was placed under the supervision of protective services for foster home placement upon the court's finding that placement with his parents would be detrimental to the minor and the child's welfare required custody to be taken from his parents.[2] Upon the recommendation of protective services, the court referred the minor for permanency planning, directed that a referral to the Santa Barbara County Adoption Agency be made, and ordered monthly supervised visitation with the infant for appellant.

■ We agree with appellant that the juvenile court erred by not ordering a reunification plan as part of its disposition and by referring the child to permanency planning at that stage. It appears that the prospects for successful reunification in this case are not good. However, appellant is afforded an opportunity under the law to reform her conduct with the aid of appropriate social services aimed at reuniting the family. Respondent, County of

---

[2] The whereabouts of the minor's father were unknown.

Santa Barbara, would have us construe the statutory scheme as permitting a court to circumvent reunification endeavors whenever such efforts appear doomed to fail. We do not deem it appropriate to create such a judicial exception to the statutes.

■ The legislative scheme contemplates immediate and intensive support services to reunify a family where a dependency disposition removes a child from parental custody. Early planning for alternative permanent placement in a section 300, subdivision (a) case may only begin where timely return to parental custody proves improbable by the time of the six-month status review of a foster placement disposition and the initial permanency planning hearing. (See §§ 366, 366.2 and 366.25.)

■ Prior to any dispositional order in a section 300 case, the probation officer is required to prepare a social study of the minor. (§§ 280, 358.) The study must include a recommended plan for family unification if it advises that the minor be removed from the home. (Cal. Rules of Court, rule 1376(b).)[3] The Advisory Committee comment to rule 1376(b) suggests that the plan ". . . might include specific recommendations for improvements within the home, successful completion of therapy programs, or other conditions for returning the minor to the home. This will serve to put the family on notice as to what must be accomplished to reunite the family." The court must read and consider the study prior to any judgment and order of disposition. (§ 358; rule 1376(d).)

■ Where a dispositional order places a child described by section 300, subdivision (a) in nonparental physical custody, the court must ". . . order the probation officer to provide child welfare services to the minor and the minor's parents or guardians for the purpose of facilitating reunification of the family within a maximum period not to exceed 12 months. . . ." (§ 361, subd. (e); see also § 16507 [county welfare department staff to provide family reunification services]; § 16525 [family reunification services described].) Section 362, subdivision (a) provides that ". . . the court may make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the minor, . . . subject to further order of the court and *consistent with subdivision (e) of Section 361.*" (Italics added.)

■ A nonparental placement disposition requires the court to inform the parents of the provisions of section 366.25 (permanency planning) and Civil Code section 232 (termination of parental rights) and warn them that their parental rights may be terminated permanently under these sections if they

---

[3]All further references to rules are to the California Rules of Court.

are not able to resume custody within 12 months. (361, subd. (b); see also rule 1377(d).)

■ At the subsequent six-month status review of a dependent child's foster care placement, a juvenile court must order the minor returned to parental custody unless such return would create a substantial risk of detriment to the child's welfare. (§ 366.2, subd. (e).) If the court cannot order the minor returned to the physical custody of parents or guardians at the status review hearing, a permanency planning hearing must then be conducted by the court to determine the future status of the minor no later than 12 months after the original placement. (§ 366.25, subd. (a).)

■ Viewing the foregoing provisions together, we find that they require a good faith effort to develop and implement a family reunification plan whenever a court renders a dependency disposition of foster care in a 300, subdivision (a) case. Even before the 1982 legislation (Stats. 1982, ch. 978, §§ 20, 21) revamped sections 361 and 362 to mandate court ordered reunification services, a failure to formulate an adequate reunification plan had been held to be reversible error under rule 1376(b). (See *In re Bernadette C.* (1982) 127 Cal.App.3d 618, 625-626 [179 Cal.Rptr. 688]; *In re Jeremy C.* (1980) 109 Cal.App.3d 384, 388-393 [167 Cal.Rptr. 283].)

In *In re Jamie M.* (1982) 134 Cal.App.3d 530, 545 [184 Cal.Rptr. 778], a dependency case involving the removal of custody from a mother suffering from paranoid schizophrenia, the court stated: ". . . the reunification plan as required by rule 1376 is a crucial part of a dispositional order which removes any child from the home. The purpose of the requirement is to create a plan to reunite the family in a situation where the best interests of all concerned, the child, the parent and society as a whole, are well served. [¶] The reunification plan must be internally consistent and have as its objective the provision of such services or counselling as will lead to the resumption of a normal family relationship."

■ The court's order for permanency planning, the ultimate goal of which is termination of appellant's parental rights and adoption of her son, is not consistent with the mandatory family reunification objective. The process of permanent placement should not have been commenced in this case unless and until the court found it could not order appellant's son to be returned to her custody at the six-month status review hearing and found at the initial permanency planning hearing that there was not a substantial probability that the minor would be returned within another six months. (§§ 366, 366.2, 366.25; rules 1378, 1379.)

■ The status review hearing is the proper time for a court to evaluate whether reunification efforts cannot succeed. The court must review ". . .

the extent of progress which has been made toward alleviating or mitigating the causes necessitating placement in foster care . . . ." (§ 366, subd. (a).) The court must also order the minor returned to appellant's physical custody unless it finds that such return would create a substantial risk of detriment to the minor. In making this determination, the court is required to ". . . consider the efforts or progress, or both, demonstrated by the parent . . . and the extent to which . . . she cooperated and availed . . . herself of services provided. . . ." If she fails to participate in court-ordered treatment programs, this fact will constitute prima facie evidence that return would be detrimental. (§ 366.2, subd. (e).) A referral to permanency planning at the earlier time of the disposition hearing was not proper.

This is not to say we do not recognize the difficulties in this case of devising a reunification plan, but the effort must be made to provide suitable services. ■ "Parenting is a fundamental right, and accordingly, is disturbed only in extreme cases of persons acting in a fashion incompatible with parenthood. . . ." (*In re Carmaleta B.* (1978) 21 Cal.3d 482, 489 [146 Cal.Rptr. 623, 579 P.2d 514].)

As to appellant's claim that visitation is unduly restrictive, we find that the visitation order should be reexamined by the juvenile court bearing in mind the reunification goal as well as all other relevant considerations. (See Civ. Code, § 4601 [reasonable visitation must be awarded to a parent unless such visitation would be detrimental to the child's best interests].) Visitation can be a vital component of a reunification program since personal contact may strengthen the parent-child relationship and serve as an expression of a parent's desire to recover custody. (See 2 Cal. Juvenile Court Practice, Dependent Minors, Status Offenders (Cont.Ed.Bar 1981) § 20.25.) However, as another court has commented, "[w]e do not think . . . that the Legislature has mandated . . . a mechanical approach to a reunification plan for a family. Such a plan must be appropriate for each family and be based on the unique facts relating to that family." (*In re Edward C.* (1981) 126 Cal.App.3d 193, 205 [178 Cal.Rptr. 694].)

We reverse and remand for further proceedings consistent with this opinion.

Stone, P. J., and Gilbert, J., concurred.