[Civ. No. 59511. Second Dist., Div. One. Sept. 14, 1981.]

In re PAULA P., a Minor.
THEODORE NAPOLI et al., Petitioners and Appellants, v.
ELIZABETH P., Objector and Appellant.

**COUNSEL**

David P. Schwartz for Petitioners and Appellants.

Paul Arthur Turner, under appointment by the Court of Appeal, for Objector and Appellant.

OPINION

DEVICH, J.*—

I

INTRODUCTION

On April 4, 1978, Theodore and Carol Napoli, hereafter referred to as petitioners, filed a verified petition for freedom from parental custody and control pursuant to Civil Code section 232.[1] On the same date, a citation was issued to the minor's mother, Elizabeth P. hereafter referred to as the mother. On May 31, 1978, a report was filed by the family relations investigator. On June 8, 1978, an additional report was filed by the family relations investigator. On June 9, 1978, the court ordered publication of the citation. On June 9, 1978, a supplemental report was filed by the family relations investigator. On July 5, 1978, another report was filed by the family relations investigator. On July 13, 1978, the certificates of publication were filed. On September 20, 1978, another report was filed by the family relations investigator.

---

*Assigned by the Chairperson of the Judicial Council.

[1]Note: Only the subdivisions discussed are set forth.

"(a) An action may be brought for the purpose of having any person under the age of 18 years declared free from the custody and control of either or both of his parents when such person comes within any of the following descriptions:

"(1) Who has been left without provision for his identification by his parent or parents or by others or has been left by both of his parents or his sole parent in the care and custody of another for a period of six months or by one parent in the care and custody of another for a period of six months or by one parent in the care and custody of the other parent for a period of one year without any provision for his support, or without communication from such parent or parents, with the intent on the part of such parent or parents to abandon such person. Such failure to provide identification, failure to provide, or failure to communicate shall be presumptive evidence of the intent to abandon. Such person shall be deemed and called a person abandoned by the parent or parents abandoning him. If in the opinion of the court the evidence indicates that such parent or parents have made only token efforts to support or communicate with the child, the court may declare the child abandoned by such parent or parents. In those cases in which the child has been left without provision for his identification and the whereabouts of the parents are unknown, a petition may be filed after the 120th day following the discovery of the child and citation by publication may be commenced. The petition may not be heard until after the 180th day following the discovery of the child.

"The fact that a child is in a foster care home, licensed under Chapter 3 (commencing with Section 1500) of Division 2 of the Health and Safety Code, shall not prevent a licensed adoption agency which is planning adoption placement for the child, from instituting, under this subdivision, an action to declare such child free from the custody

On October 23, 1978, the father, not a party to this appeal, filed objections in the form of a demurrer to the petitions, and on November 8, 1978, a first amended petition was filed. On November 17, 1978, the objections in the form of demurrer were ordered off calendar and the mother as well as the father demurred to the first amended complaint. On November 22, 1978, petitioner moved for summary judgment. On December 22, 1978, the demurrer was overruled and the motions to dismiss and for summary judgment were denied. On February 12, 1979, another supplemental report was filed by the family relations investigator.

---

and control of his parents. When the requesting agency is a licensed county adoption agency, the county counsel, and if there is no county counsel, the district attorney shall institute such action.

"(2) Who has been cruelly treated or neglected by either or both of his parents, if such person has been a dependent child of the juvenile court, and such parent or parents have been deprived of his custody for the period of one year prior to the filing of a petition praying that he be declared free from the custody and control of such cruel or neglectful parent or parents.

"(3) Whose parent or parents suffer a disability because of the habitual use of alcohol, or any of the controlled substances specified in Schedules I to V, inclusive, of Division 10 (commencing with Section 11000) of the Health and Safety Code, except when such controlled substances are used as part of a medically prescribed plan or are morally depraved, if such person has been a dependent child of the juvenile court, and the parent or parents have been deprived of his custody because of such disability, or moral depravity, for the period of one year continuously immediately prior to the filing of the petition praying that he be declared free from the custody and control of such parent or parents. As used in this subdivision, 'disability' means any physical or mental incapacity which renders the parent or parents unable to adequately care for and control the child....

"(7) Who has been cared for in one or more foster homes, *residential facilities licensed pursuant to Chapter 3 (commencing with Section 1400) of Division 2 of the Health and Safety Code*, or health facilities licensed pursuant to Chapter 2 (commencing with Section 1250) of Division 2 of the Health and Safety Code, under the supervision of the juvenile court, the county welfare department or other public or private licensed child-placing agency for two or more consecutive years, providing that the court finds by clear and convincing evidence that return of the child to his parent or parents would be detrimental to the child and that the parent or parents have failed during such period, and are likely to fail in the future, to do the following:

"(i) Provide a home for the child;

"(ii) Provide care and control for the child; and

"(iii) Maintain an adequate parental relationship with the child.

"Physical custody of the child by the parent or parents for insubstantial periods of time during the required two-year period will not serve to interrupt the running of such period.

"(b) A licensed adoption agency may institute under this section, an action to declare a child, as described in this section, free from the custody and control of his parents. When the requesting agency is a licensed county adoption agency, the county counsel, or if there is no county counsel, the district attorney shall in a proper case institute such action."

On February 14, 1979, the hearing commenced on the first amended petition. On February 21, 1979, the court granted the parents' joint motion for judgment of dismissal as to the first cause of action pursuant to Code of Civil Procedure section 631.8. After the submission of written argument, the court filed its intended decision. In its intended decision, the court sustained only the third cause of action as to the mother. As to the remaining causes of action, judgment was to be entered on behalf of the mother. On July 3, 1979, the court filed its findings of fact and conclusions of law. On the same date, the judgment declaring the minor free of the mother's custody and control pursuant to Civil Code section 232. On August 17, 1979, the mother filed a pro. per. notice of appeal from the judgment. On August 22, 1979, petitioners filed a notice of appeal from the judgment as to the second, fourth, and sixth causes of action.

## II

### STATEMENT OF FACTS

Paula P., the little girl who is the subject of this action was born on January 7, 1976. Paula was born addicted to heroin as the result of her mother's use of heroin and one week after her release from postnatal care Paula was brought back to the hospital suffering from convulsions and other symptoms resulting from withdrawal from her congenital heroin addiction. In Ventura County a petition was filed under the Juvenile Court Law which resulted in an order finding Paula a dependent child under Welfare and Institutions Code section 600, subdivisions (a) and (d)[2] now Welfare and Institutions Code section 300, subdivisions (a)

---

[2]Welfare and Institutions Code section 600—"Any person under the age of 18 years who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge such person to be a dependent child of the court.

"(a) Who is in need of proper and effective parental care or control and has no parent or guardian, or has no parent or guardian willing to exercise or capable of exercising such care or control, or has no parent or guardian actually exercising such care or control.

". . . . . . . . . . . . . . . . .

"(d) Whose home is an unfit place for him by reason of neglect, cruelty, depravity, or physical abuse of either of his parents, or of his guardian or other persons in whose custody or care he is."

Welfare and Institutions Code section 300—Only noted change is in subdivision (a) by adding an additional sentence after the word control. "No parent shall be found to be incapable of exercising proper and effective parental care or control solely because of a physical disability including, but not limited to, a defect in the visual or auditory functions of his or her body, unless the court finds that the disability prevents the parent from exercising such care or control."

and (d). The dependency status began March 18, 1976, and was continuous through the time of trial, and her parents had been deprived of Paula's custody continuously since the beginning of Paula's dependency. Paula was placed in the custody of her paternal grandmother, Norma Tindall, in order to attempt to reunite her with her parents as soon as possible. During the time Paula was with her paternal grandmother, her mother demonstrated no concern for her welfare and assumed no responsibility for her care. Paula was first placed in a formal foster home in November 1976. In July 1977 the foster family moved from the State of California. Paula was placed in the foster home of the petitioners, Theodore and Carol Ann Napoli, where she has resided continuously without interruption to the present time as a member of the Napoli family. Paula was in the mother's care during the week between her discharge from postnatal care and her return to the hospital for treatment of heroin withdrawal. During the ensuing nine months that Paula was in the home of her grandmother, the mother did not visit Paula with any frequency and from early November 1976 to the time of trial Paula had absolutely no contact with the mother.

The mother is an admitted heroin addict who was using heroin before Paula's birth and within two or three weeks after Paula's birth. The use of heroin continued through 1977 and through the entire period of time that she was supposed to be involved in a drug rehabilitation program. By the end of 1978 she was admittedly engaging in the sale of heroin during 1978. Her history of her involvement with rehabilitation programs demonstrated evident lack of sincerity on her part to overcome her heroin addiction.

The sole ground upon which the petition was sustained as to the mother was contained in the third cause of action of the first amended petition. That cause of action alleged that Paula had been neglected and cruelly treated by her parents in that they failed to provide the proper and effective parental care or control, failed to provide a home for Paula and allowed Paula to be born addicted to heroin as a result of her mother's use of that substance. The trial court applied the standard of clear and convincing evidence in making its findings. The cause of action alleging abandonment was denied as to the mother although the court noted that the petitioners would have prevailed if the proper standard had been a preponderance of the evidence.

The court made specific findings regarding Paula's welfare. Paula is an inordinately shy and fearful child especially when confronting

strangers and her conduct is often wilfull and stubborn. She has special needs for a secure, predictable environment to enable her to combat her fears; she needs exposure to people she can trust and who understand her and are sensitive to her feelings; and she needs parents who can control her without being either too domineering or too permissive. Petitioners were found to be ideally suited to meet those needs, aware of her problems and history and deeply committed to Paula and concerned about her above and beyond their own personal desires. The court found that because of her personal characteristics, the change in her home (from that of the petitioners, her foster parents) would be detrimental and her continued residence with her foster parents was the least detrimental alternative for her and that in reality her biological parents were never really her parents. The court concluded that "Paula's best interests necessitate that petitioners be awarded custody of Paula. An award of custody of Paula or her return to either or both of her biological parents would be detrimental to her."

The mother appeals from the judgment against her freeing Paula from her custody and control because of her cruelty and neglect as found by the trial court. Petitioners appeal from the judgment of the trial court denying their first amended petition as to the mother with regard to the second, fourth and sixth causes of action which alleged abandonment, disability based on habitual use of heroin and moral depravity and inability on the part of Paula's natural parents to provide her with an acceptable home in the future.

## III

### CONTENTIONS OF THE MOTHER

#### A

Is there a vagueness and ambiguity in Civil Code section 232, subdivision (a)(2), sufficient enough to render it unconstitutional?

#### B

Is there substantial evidence or adequate findings to support the conclusion that removal of the minor from the mother's custody is essential to avert harm to the minor?

## C

Did the trial court apply the wrong standard of proof that of clear and convincing evidence, in sustaining the petition?

## IV

### DISCUSSION

## A

Is there a vagueness and ambiguity in Civil Code section 232, subdivision (a)(2) sufficient enough to render it unconstitutional?

The mother contends the Legislature's use of the phrases "cruelly treated or neglected" and "cruel or neglectful" contain a vagueness or failure of definition which renders subdivision (a)(2) unconstitutional. The cases cited arise primarily from the application of penal statutes in criminal prosecutions.

In addition, the mother maintains that because of the crucial rights at stake here, i.e., parent and child relationship, the impact of any vagueness is more pronounced in light of that special relationship.

Citing, *In re Carmaleta B.* (1978) 21 Cal.3d 482, 489 [146 Cal.Rptr. 623, 579 P.2d 514]: "Parenting is a fundamental right, and accordingly, is disturbed only in extreme cases of persons acting in a fashion incompatible with parenthood. Thus, the court in *In re T. M. R.* (1974) 41 Cal.App.3d 694, 703 [116 Cal.Rptr. 292] held: 'The relationship of . . . natural parent . . . (and) . . . . children is a vital human relationship which has far-reaching implications for the growth and development of the child. [Citation.] Thus, the involuntary termination of that relationship by state action must be viewed as a drastic remedy which shall be resorted to only in extreme cases of neglect or abandonment.'"

It therefore naturally follows, that in this special relationship, as in penal statutes, terms must be explicit enough to inform those subject to them, of the kind of conduct which is prohibited, and that this requirement is a fundamental essential of due process of law.

To counter the vagueness theory of the mother, the petitioners strongly rely on the holding in *In re Sherman M.* (1974) 39 Cal.App.3d

40 [113 Cal.Rptr. 847], 43, 44, when the reviewing court was asked to hold that the terms "habitually intemperate" were vague. The reviewing court did not. Stating: ""[A] statute which either forbids or requires the doing of an act in terms so vague that men of common [fn. omitted] intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." [Citations.]' [¶] We do not believe that the words 'habit' or 'habitually' are afflicted with the same infirmity. The terms 'habit' and 'habitual' have been defined in the cases, encyclopedias and law dictionaries. The definitions are understandable, definite and very much the same. They are simple words with simple meanings."

The terms "cruel or neglectful" are in themselves, simple words with simple meanings as those described in *In re Sherman M., supra.*

In addition, in *In re Sherman M., supra*, the court considered the following: (a) the requirements imposed in a civil proceeding are less strict than those in proceedings arising from criminal statutes, and (b) criminal prosecution in which the defendant's interests are at least technically paramount is not the same as in a civil proceeding where the goal is to promote a child's best interests.

Further, "The purpose of the statute is to protect children, not to punish a criminal offender. The interest sought to be protected is that of the welfare of a child. Its need to be raised with love, emotional security and physical safety are paramount to any right of a neglectful parent to have the custody and physical proximity of its child. We do not deny that appellant's assertion that the right of a parent to one's child is dearer than life itself. However, a child is not a chattel. In the present case, the issue is best presented not by the question 'Who has the right to custody of the child?' But by the question 'What will promote and protect the best interests of the child?' The statute requires that the law be interpreted to promote that end. 'The provisions of this chapter shall be liberally construed to serve and protect the interests and welfare of the child.' (Civ. Code, § 232.5)"

A 1980 legislative enactment effective January 1, 1981, is instructive regarding the Legislature's intent. Civil Code section 232.6 which is added by the provisions of Statutes of 1980, chapter 1229, section 3 provides inter alia that: "The purpose of this chapter is to serve the welfare and best interests of a child by providing the stability and security of an adoptive home when those conditions are otherwise missing from

his or her life." Here, petitioners intend to commence proceedings to adopt Paula as their daughter. The statute encourages actions to free children from custody and control of parents who fail to provide such a home in favor of a sound adoptive placement which will offer stability and security. Obviously, attempting to protect the interests of the parent is secondary in the Legislature's judgment.

Petitioners properly note that "cruel" punishment is a term which is found in our own Constitution (art. I, § 17) as well as in the Bill of Rights (U.S. Const., 8th Amend.). It would seem inapposite to suggest that a term actually employed in the Constitution is so inherently vague as to constitute a denial of due process.

Also, that cruelty and neglect to children is not substantially different than the provisions of Penal Code sections such as sections 273a and 273d relating to child abuse and which speak in terms, among others, which prohibit permitting a child to "suffer . . . unjustifiable . . . mental suffering" and "cruel . . . corporal punishment." The provisions of Penal Code section 273a have repeatedly been sustained in that they are not void for vagueness. (*People* v. *Thomas* (1976) 65 Cal.App.3d 854 [135 Cal.Rptr. 644].)

In *People* v. *McCaughan* (1957) 49 Cal.2d 409 [317 P.2d 974], cited by the mother, the court considered the validity (alleged vagueness) of the provisions of Penal Code section 361 which provides: "Every person guilty of any harsh, cruel, or unkind treatment of, or any neglect of duty towards, any idiot, lunatic, or insane person, is guilty of a misdemeanor."

The court found that the words "harsh" and "unkind" were used to define criminal offenses so vague as to be held void. However, the Supreme Court with regard to the remainder of the statute, stated that the unconstitutional provisions relating to harsh and unkind treatment were severable from the provisions relating to "cruel" treatment and "neglect of duty" and that the balance of the statute was constitutionally valid: "Since the dominant purpose of the statute to protect insane persons can be affected by elimination of the severable unconstitutional provisions, the constitutional provisions may stand alone and remain enforced. [Citation omitted.] We conclude, therefore, that insofar as it provides that persons guilty of any '. . . cruel . . . treatment of, or any neglect of duty towards, any idiot, lunatic or insane person . . .' is guilty of a misdemeanor, section 361 is a valid statute."

Conclusion would be that section 232, subdivision (a)(2) is not vague and uncertain and does withstand a constitutional attack on the basis of due process.

## B

█ The next contention by the mother is whether there is substantial evidence or adequate findings to support the conclusion that removal of the minor from the mother's custody is essential to avert harm to the minor.

In order to assist the trial judge in this determination, he was aided by many investigative reports and testimony elicited from Nancy Brown, the family relations investigator; Dr. Jerome Evans, a licensed psychologist; Norma Tindall, the minor's grandmother and first foster parent; Sydne Hampton, a social worker supervising the minor's case; and the mother.

The reports were in great detail and quite lengthy. But in a condensed manner, they set forth the mother's problems of drug addiction, arrests, and treatment, also the limited contact between the mother and the minor, the psychological and physical changes, for the better, of the minor after placement with the petitioners and the present family condition of the mother. Also, her knowledge of the legal consequences involved in regards to a possible adoption.

It is not essential for a determination of the rights of the prospective parties to this action for this court to set out a point by point analysis of the steps taken or not taken by the mother.

█ As set forth in *In re Heidi T.* (1978) 87 Cal.App.3d 864 [151 Cal.Rptr. 263], the court's function is limited to a determination whether substantial evidence existed to support the conclusions reached by the trial court in utilizing an appropriate standard.

It is within the province of the trier of fact to pass on the weight to be given evidence and credibility of the witnesses. The decision of the trier of fact when supported by substantial evidence is binding upon this court. (*In re Ayers* (1953) 116 Cal.App.2d 55 [253 P.2d 65].)

The mother would want this court to believe that the facts submitted to the trial court and its findings that the minor has a need to be secure

in a predictable environment, to be exposed to people she can trust and who are sensitive to her feelings, and to be present with parents who control her without being either too domineering or too permissive; that if the minor were removed from petitioner's home that the following would transpire: "Her symptoms would likely become even more extreme, and she might experience problems with lack of sleep, loss of appetite, withdrawal from contact with others, and if forced into contact with others, an increasingly demanding, bossy and controlling personality," are insufficient to justify a removal. And that there is no substantial evidence presented that placement away from the mother was *essential* to avert harm to the minor. The mother relies heavily on the fact she is now providing an adequate relationship for her two other children.

*In re Lynna B.* (1979) 92 Cal.App.3d 682, 684 [155 Cal.Rptr. 256], factually quite similar to the case at hand, discounted the mother's reliance on being able to provide a present home for the minor as controlling in a placement. "In a proceeding by foster parent-guardians to declare a six-year-old girl free from parental custody and control, the evidence was sufficient to support the trial court's finding that placement of the girl with her natural mother would be detrimental, where a child psychiatrist testified that separation of the girl from her foster parents would lead to grief and withdrawal of love and trust and would interfere with her capacity to form relationships in the future; the county probation report recommended that the petition be granted; and the supervising social worker, a social services practitioner, and the girl's foster parents, testified about the girl's relationship with the foster parents, her adjustment in their home, and her relationship with her mother."

Further quoting from headnotes in *In re Lynna B., supra,* at page 686, "A home within the meaning of Civ. Code, § 232 ..., is a place where one lives with his or her family, a place where one feels secure with its familiar conditions, circumstances, and associations.... [T]he mother's ability to provide a house for the child did not require the child to be returned to her, where the record did not reflect that the child had ever been in that house, tests revealed the child had put down deep roots with the foster parents and considered them her family, and return of the child to her mother was found to be detrimental to the child."

■ Paula has never known a home with the mother. ■ In fact the trial judge properly found the mother neglected the minor from the time she was born.

Predicting the future with absolute certainty is not the goal, but merely to determine the likelihood of whether the parent will in the future change for the good. One's "track record" prior to the hearing can be the best indication of such a likelihood.

It would be safe to assume the trial judge placed some emphasis on the fact the mother used heroin on several occasions during 1978, as set forth in his findings, paragraph 14, page 334 of the clerk's transcript, in ruling against placement of the minor with the mother.

The court should and did determine if the factors which gave rise to the neglect still persisted at the time of the hearing. And although the trial judge made a finding it had not been adequately proven the mother would in the future fail to provide a home, care and control of the minor and maintain an adequate parental relationship, placement of the minor with her would be detrimental because of the special needs at this point of her life. Her continued residence with petitioners was determined to be the least detrimental alternative for Paula.

Essential harm to the minor could certainly be inferred from the trial court's findings. The use of the word "essential harm" in itself is not necessary. The bottom line is what is best for the minor based upon substantial evidence presented to the trial judge.

The concept of cruelty and neglect, that is the failure to provide the proper and effective parental care or control; failure to provide a home for the minor; minimal contact with the minor at best; allowing the minor to be born addicted to heroin as a result of the mother's use of that substance; the mother's continued use of drugs, certainly comes within the statute Civil Code section 232, and is sufficiently shown by the trial court findings.

■ As stated throughout the record the mother was and still is no more than a biological mother, never a mother in fact. The needs of Paula demand she remain with petitioners for her best interest as determined rightfully by the trial court.

## C.

Did the trial court apply the wrong standard of proof in sustaining the petition?

The proper standard of proof to be applied in a Civil Code section 232 proceeding to free a child of parental custody and control is a showing of clear and convincing evidence. (*In re Cynthia K.* (1977) 75 Cal.App.3d 81 [141 Cal.Rptr. 875].)

The mother would seek this court to require a higher standard of proof, that of proof beyond a reasonable doubt. The mother requests such a finding because of the severe consequences involved, that is the potential taking away of one's child. And in that regard, the mother cites *In re Angelia P.* (1981) 28 Cal.3d 908 [171 Cal.Rptr. 637, 623 P.2d 198].

The proper standard of proof is clear and convincing evidence, and the court indicated it used such a standard in forming its determinations, the court did not apply an improper standard.

## V

The final contentions to be made are those arguments proposed by the petitioners as to whether the court erred in view of the evidence or its findings of fact in failing to grant a judgment against the mother based upon the second, fourth and sixth causes of action.

Petitioners believe there was no substantial evidence to support the court's findings the mother did not abandon the minor, as set forth in the second cause of action; or that she did not suffer a disability as the result of her use of heroin as set forth in the fourth cause of action; and that the mother would not likely fail to provide for minor in the future, as set forth in the sixth cause of action.

An in depth reexamination and discussion would not seem necessary.

The findings of the trial judge and the reasons for those findings were well set out on the record.

And as indicated previously, it is within the province of the trier of fact to pass on the weight to be given evidence and the credibility of the

witnesses. The decision of the trier of fact when supported by substantial evidence is to be binding upon this court. (*In re Ayers* (1953) 116 Cal.App.2d 55 [253 P.2d 65].)

Petitioners prevailed in their third cause of action, by the trial court, and the minor was properly free from parental custody and control under Civil Code section 232, subdivisions (a)(2) as a person cruelly treated or neglected by her mother.

This court has upheld that determination. Therefore there would seem to be no critical need to further pass on the arguments of the petitioners.

There may have been an issue as to whether the trial court adopted the wrong standard of proof in deciding the issue of abandonment, the use of clear and convincing evidence instead of preponderance of the evidence, in the second cause of action, as set forth in *In re Rose G.* (1976) 57 Cal.App.3d 406 [129 Cal.Rptr. 338]. However, that determination would have no effect on the outcome of this case since the petitioners prevailed on a separate cause of action. The court sees no benefit to be gained by either party by remanding the matter back to the trial court for a redetermination on that sole issue if in fact the court was in error. We do not judge on that issue.

## VI

### CONCLUSION

Petitioners were properly awarded a judgment on their third cause of action.

The mother was properly awarded a judgment on her second, fourth and sixth causes of action.

Judgment of trial court is affirmed in all respects.

Lillie, Acting P. J., and Hanson (Thaxton), J., concurred.