[Nos. H004140, H004145, H004147. Sixth Dist. Aug. 31, 1989.]

In re CHRISTINA A. et al., Persons Coming Under the Juvenile Court Law.
PEDRO SILVA, as Chief Probation Officer, etc., Plaintiff and Respondent, v.
REBECCA A., Defendant and Appellant.

COUNSEL

Anna L. Ollinger, under appointment by the Court of Appeal, and Deanna F. Lamb for Defendant and Appellant.

Donald L. Clark, County Counsel, and Jamie Jacobs-May, Deputy County Counsel, for Plaintiff and Respondent.

OPINION

ELIA, J.—Rebecca A. appeals juvenile court dispositional and permanency planning orders relative to her three children, Christina, Robert and Paul A. She contends on appeal that Civil Code section 232, subdivision (a)(6) and Welfare and Institutions Code[1] section 361.5, subdivision (b)(2) are either unconstitutionally vague or that they should be defined more strictly than the statutory language allows; and that there was insufficient evidence to support a finding that appellant came under the provisions of section 361.5, subdivision (b)(2). We reject both contentions and affirm.

Barely a month after their previous dependency status had been dismissed, Christina, Robert and Paul were taken into protective custody on May 25, 1987, when appellant was arrested. On May 27, petitions were filed alleging that Robert, Paul and Christina came under the provisions of section 300, subdivision (a). On July 14, a petition was filed alleging that Christina came under the provisions of section 300, subdivision (d) after a physical examination revealed evidence consistent with sexual molestation. On July 27, an amended section 300, subdivision (d) petition was filed as to Christina.

A jurisdictional hearing was held on October 7, 1987. Appellant admitted the allegations of the amended section 300, subdivision (a) petitions as to all three children and of the amended section 300, subdivision (d) petition as to Christina.

The Santa Clara County Department of Social Services (DSS), petitioner, requested that appellant be evaluated to determine whether reunification services should be bypassed, pursuant to section 361.5, subdivision (b)(2).[2]

---

[1] All further references are to the Welfare and Institutions Code unless otherwise stated.

[2] Section 361.5, subdivision (a) provides that reunification services shall be provided to the family of a child removed from his or her parent's or guardian's custody except as provided in subdivision (b). Subdivision (b) applies this exception where "the parent is suffering from a mental disability that is described in Section 232 of the Civil Code and that renders him or

Evaluations were prepared by a psychologist and by a physician. These evaluations were admitted into evidence at the dispositional hearing on November 9 and December 10, 15 and 17, 1987. At the conclusion of this hearing, the court made findings consistent with section 361.5, subdivisions (b)(2) and (c).

A permanency planning hearing was held on April 19, 1988, and a permanent plan of guardianship was made for all three children. This appeal ensued.

■■ Civil Code section 232, subdivision (a)(6)[3] allows the termination of parental rights where a parent is mentally disabled, defining mental disability as "any mental incapacity or disorder which renders the parent or parents unable to adequately care for and control the child." Appellant first argues that this definition is unconstitutionally vague unless it is defined in terms of *former* Civil Code section 232, subdivision (a)(6), as upheld in *In re Carmaleta B.* (1978) 21 Cal.3d 482, 490 [146 Cal.Rptr. 623, 579 P.2d 514]. We reject this argument.

Former Civil Code section 232, subdivision (a)(6) permitted the termination of parental rights only when a parent was, and would remain incapable of controlling a child because of "mental deficiency or mental illness." In *Carmaleta B.* the California Supreme Court rejected a request that it liberalize the definition of mental illness "where the parents are demonstrably incapable of providing proper care but are nevertheless not so incapacitated as to require '. . . supervision, treatment . . . or restraint'" on the grounds that "family rights, both the parent's and the child's rights, should not be vulnerable to a too easy finding of mental illness." (*In re Carmaleta B., supra,* 21 Cal.3d at p. 491.)

In 1983, however, the Legislature amended Civil Code section 232, subdivision (a)(6) to substitute the term "mentally disabled" for "mental deficiency or mental illness." This less stringent standard was upheld three years later in *In re Amie M.* (1986) 180 Cal.App.3d 668, 673 [225 Cal.Rptr. 645]. Noting that "an amendment materially changing a statute following a court decision interpreting the statute in its original form is to be regarded as an indication of legislative intent to change the meaning of the law," the

---

her incapable of utilizing those services." Subdivision (c) provides in part: "When it is alleged, pursuant to paragraph (2) of subdivision (b), that the parent is incapable of utilizing services due to mental disability, the court shall order reunification services unless competent evidence from mental health professionals establishes that, even with the provision of services, the parent is unlikely to be capable of adequately caring for the child within 12 months."

[3] This statute applies only to proceedings to terminate parental rights and is not strictly applicable to this dependency proceeding. Nonetheless, we will examine it in the context of appellant's argument that Welfare and Institutions Code section 361.5, subdivision (b)(2) is unconstitutionally vague, since it is referred to in that section.

court stated that in amending the statute, the Legislature "presumably intended to ease the evidentiary burdens of the petitioners." (*Ibid.*)

Appellant would have us reject the amendment and the obvious intent it embodies in favor of the more stringent definition it replaced. This is not the function of an appellate court, and we decline to do so.

Appellant argues, however, that if we reject this definition the statutes are unconstitutionally vague because their meaning must be guessed at and is inherently subjective.

■ Life, liberty and property may not be taken by virtue of a statute whose terms are so vague that "men of common intelligence must necessarily guess at its meaning and differ as to its application . . . ." (*Connally* v. *General Const. Co.* (1926) 269 U.S. 385, 391 [70 L.Ed. 322, 328, 46 S.Ct. 126].) Vagueness occurs "when a legislature states its proscriptions in terms so indefinite that the line between innocent and condemned conduct becomes a matter of guesswork. This indefiniteness runs afoul of due process concepts which require that persons be given fair notice of what to avoid, and that the discretion of law enforcement officials, with the attendant dangers of arbitrary and discriminatory enforcement, be limited by explicit legislative standards." (Tribe, American Constitutional Law (2d ed. 1988) § 12-31 at p. 1033; see also § 10-8 at p. 683.)

Appellant has failed to examine, however, whether there is a constitutionally protected interest at stake here to which her claim of vagueness would apply. Dependency proceedings are not criminal in nature, nor do they involve deprivation of parental rights. There is no question here of appellant's having sufficient notice of the "proscribed conduct" (mental disability) so as to avoid it. Nor does this statute impinge on sensitive areas of basic freedoms so as to inhibit their exercise. (See *Grayned* v. *City of Rockford* (1972) 408 U.S. 104, 109 [33 L.Ed.2d 222, 228, 92 S.Ct. 2294].) Neither is there an issue of custody at this juncture, since appellant's children were taken into protective custody before the dependency petitions were filed and had not been returned to her since these proceedings had commenced.

The requirements of due process "apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." (*Board of Regents* v. *Roth* (1972) 408 U.S. 564, 569 [33 L.Ed.2d 548, 556, 92 S.Ct. 2701].) Appellant's only conceivable argument is that she has a constitutionally protected interest in receiving reunification services. But if this is a property right to a "benefit," as in *Goldberg* v. *Kelly* (1970) 397 U.S. 254 [25 L.Ed.2d 287, 90 S.Ct. 1011], she must show more than a desire or an expectation of the benefit; she must show an entitlement to it.

(*Board of Regents* v. *Roth, supra,* 408 U.S. at p. 577 [33 L.Ed.2d at p. 561].) She has failed to do this. And if her claim is that the deprivation of reunification services interferes with a constitutionally protected liberty interest in "the companionship, care, custody, and management" of her children (*Stanley* v. *Illinois* (1972) 405 U.S. 645, 651 [31 L.Ed.2d 551, 558, 92 S.Ct. 1208]) she must establish that the statute violates due process or equal protection.

■ Appellant's vagueness claim is essentially an argument that the statute gives insufficient guidelines to those charged with its enforcement to ensure that they will correctly discriminate between those parents to whom it should apply and those to whom it should not. This is a procedural due process argument.

Examined as such, we are satisfied the statute adequately protects against the kind of arbitrary enforcement which a claim of vagueness envisions. Appellant was notified, pursuant to section 358, subdivision (c), that reunification services might not be extended her, of the provisions of section 361.5, subdivision (b)(2), and that if reunification was not ordered the court would hold a permanency planning hearing at which it could order the filing of a petition to terminate her parental rights. At the dispositional hearing, appellant was represented by counsel, and had the opportunity to present evidence and to confront and cross-examine adverse witnesses before an impartial fact finder. The petitioner had the burden of proof to establish, through evidence of "competent mental health professionals" that appellant came within the provisions of section 361.5, subdivision (b)(2). While this evidentiary burden is considerably less than that required to support a finding of mental disability under Civil Code section 232, subdivision (a)(6), that difference is appropriate to the distinction between a finding that a parent should not be afforded reunification services, and a judgment terminating parental rights.

■ Viewed as an equal protection claim, appellant's argument is that the classification of parents with dependent children into those provided with reunification services and those to whom such services are not extended, is invidious and discriminatory. The equal protection clause requires some rationality in the nature of the class singled out and requires that the distinctions drawn have " 'some relevance to the purpose for which the classification is made.' " [Citations.] (*Rinaldi* v. *Yeager* (1966) 384 U.S. 305, 309 [16 L.Ed.2d 577, 580, 86 S.Ct. 1497].)

We perceive no improper purpose underlying the statute. The stated purpose of section 361.5, subdivision (b) is to exempt from reunification services those parents who are unlikely to benefit. This purpose is related to

that of the juvenile law itself—to ensure the well-being of children whose parents are unable or incapable of caring for them by affording them another stable and permanent home within a definite time period. Although the goal of the juvenile law is to reunite children with their parents whenever possible, this reunification must be accomplished within 18 months from the time the child is originally taken from his or her parents' custody. (§ 366.25, subd. (a).) This strict time frame, in turn, is a recognition that a child's needs for a permanent and stable home cannot be postponed for an extended period without significant detriment. (See § 352; 1 Goldstein, Freud and Solnit, Beyond the Best Interests of the Child, pp. 42-43; *In re Micah S.* (1988) 198 Cal.App.3d 557, 566 [243 Cal.Rptr. 756] [Brauer, J., conc.].)

It is apparent that section 361.5, subdivision (b) bears a rational relation to these purposes. It is reasonable for the state, before expending its limited resources for reunification services, to distinguish between those who would benefit from such services and those who would not. One of those classes of parents is those with a sufficient degree of mental disability that, even were they provided services, would still be unable to care for their children within a year, the usual time period during which services are extended (§ 361.5, subd. (a)). As the court in *Amie M.* noted of Civil Code section 232, subdivision (a)(6), the focus of section 361.5, subdivision (b) is not on the degree of parental impairment but on the needs of the child, "where it assertedly belongs." (*In re Amie M., supra,* 180 Cal.App.3d at p. 673.) We conclude it does not violate the equal protection clause.

Having concluded the statute is constitutional, we proceed to examine appellant's final argument, that there is insufficient evidence to suppport a finding that she came within the statute's purview.

■ We will affirm a trial court's finding if there is any substantial evidence to support it. (*In re Angelia P.* (1981) 28 Cal.3d 908, 924 [171 Cal.Rptr. 637, 623 P.2d 198].) In reviewing the claim, we must examine the entire record in the light most favorable to the court's orders to determine if it discloses evidence which is "reasonable, credible and of solid value" (*ibid.*) which would allow a reasonable trier of fact to find that the statute applied. On the record before us, we have no difficulty sustaining this finding.

■ Dr. Liu, a board certified psychiatrist with some additional expertise in alcohol abuse, testified that appellant suffered from episodic alcoholism and had a borderline personality disorder. He opined that appellant was in an early stage of denial as to her alcoholism and there was a "great possibility" appellant would have drinking episodes again, with their attendant potential for violence and for trauma to the children. He testified that

appellant was incapable of empathizing with others and that her relationships with her children were characterized by instability and inconsistency. In Dr. Liu's opinion, appellant was not capable of parenting her children, she would not be able to benefit from reunification services, that even with treatment her prognosis was guarded, and that more than one year and probably two or three years would be needed for successful treatment.

The written assessment of Walter Saunders, Ph.D., a clinical psychologist, was introduced into evidence. He diagnosed appellant as suffering from episodic alcohol dependence and a mixed personality disorder with histrionic, narcissistic and borderline features. He described the symptoms of this disorder in much the same terms as Dr. Liu. As to treatment, he opined that it would take a minimum of six months to one year in a structured chemical dependency setting. Even with such treatment, appellant's prognosis was poor: "Any improvement in her prognosis would demand at least one to three years of continued abstinence coupled with inpatient and continued outpatient counseling and participation in self [-]help groups such as Alcoholics Anonymous." In his opinion, appellant was unable to parent her children and would continue to be unable to do so "for the next one to three years." In the meantime, appellant represented a "significant danger to their physical and emotional well being."

Appellant presented no contrary testimony. We are satisfied that this record discloses reasonable, credible evidence from competent mental health professionals from which the trial court could have found that appellant came within the purview of section 361.5, subdivision (b)(2).

The orders are affirmed.

Capaccioli, Acting P. J., and Premo, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 16, 1989.